# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| FUJIFILM NORTH AMERICA CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| D/C EXPORT & DOMESTIC PACKING, INC., | ) ) ) | **PLAINTIFF DEMANDS TRIAL BY JURY.** |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff, FUJIFILM North America Corporation ("FNAC"), by and through its attorneys, Dennis Minichello and Matthew C. Koch of Marwedel, Minichello & Reeb, P.C., for its complaint against Defendant, D/C Export & Domestic Packing, Inc. ("D/C"), states as follows:

### THE PARTIES

1. FNAC is a New York corporation with its principal place of business at 200 Summit Lake Drive, Valhalla, New York, and was at all relevant times the owner of the property at issue in this case.

2. D/C, at all relevant times, was an Illinois corporation doing business in Illinois, located at 1300 East Devon Avenue, Elk Grove Village, Illinois, and was providing services as a warehouseman of property for hire.

**Exhibit A**

## JURISDICTION

3.  This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse to each other, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because D/C does business in this district, and all of the acts which give rise to this case occurred within this district.

## FACTUAL ALLEGATIONS

5.  FNAC was the owner of a Graphium printing machine and accessories secured to a wooden skid for handling in transportation and storage.

6.  On or about September 17, 2016, the Graphium printing machine was delivered to D/C's warehouse located at 1300 East Devon Avenue, Elk Grove Village, Illinois, for storage and the provision of warehouseman services by D/C.

7.  D/C, at all times providing services as a warehouseman for hire, agreed to and did take the Graphium printing machine into its care, custody, and control for indoor storage in its temperature-controlled warehouse.  See Exhibit 1 attached hereto and incorporated herein.

8.  D/C also agreed to abide by certain requirements in handling and storing the Graphium printing machine pursuant to the "Cargo Maritime Warehouse Due Diligence Check-list" attached hereto and incorporated herein as Exhibit 2.

9.  The Graphium printing machine was received in good order and condition by D/C.

**Exhibit A**

10. On or prior to January 10, 2017, D/C, for its own purposes, and without authorization, relocated the Graphium printing machine from indoor storage in the warehouse into a shipping container located outside of the warehouse.

11. On or about January 10, 2017, representatives of FNAC visited the D/C facility and discovered that the Graphium printing machine was being stored outdoors, exposed to freezing and otherwise inclement conditions.

12. A timely and preliminary notice of claim dated January 11, 2017, was issued to D/C. See Exhibit 3 attached hereto and incorporated herein.

13. Subsequently, on or about January 20, 2017, as a result of a more complete inspection of the Graphium printing machine, it was determined that the machine had suffered serious damages from being exposed to the freezing and otherwise inclement outdoor weather conditions while the machine was stored in the shipping container.

14. After further inspection on subsequent dates, it was determined that the Graphium printing machine was a total loss, and FNAC has suffered damages in excess of $1.65 million.

## COUNT I – BREACH OF CONTRACT

15. FNAC hereby incorporates paragraphs 1-13 as if more fully set forth herein.

16. FNAC has performed all of the obligations required of it during the storage period for the Graphium printing machine.

17. In material breach of its contractual duties, D/C failed to ensure that the Graphium printing machine was stored indoors in a temperature-controlled environment, as it had agreed to do, and breached its contract of storage by:

    a. Failing to keep the Graphium printing machine located in a temperature-controlled indoor storage facility;

**Exhibit A**

       b.   Failing to obtain permission to relocate the Graphium printing machine from an indoor temperature-controlled storage warehouse to a shipping container located outdoors of the warehouse which had no temperature-controlled protection;

       c.   Failing to determine if the Graphium printing machine could be stored outdoors in a nontemperature-controlled environment without sustaining damages as a result of the freezing and otherwise inclement outdoor weather conditions; and

       d.   Was otherwise negligent while the Graphium printing machine was in its exclusive care, custody, and control.

18.   As a proximate result of D/C's breaches of its duties and obligations, the Graphium printing machine was a total loss.

19.   D/C has paid no amount of loss to FNAC, although duly demanded.

WHEREFORE, FNAC respectfully requests that judgment be entered in its favor and against D/C in an amount not less than $1.65 million, plus costs, prejudgment interest, and such other and further relief as this Court deems equitable and just.

## COUNT II – BAILMENT

20.   FNAC hereby incorporates paragraphs 1-19 of this complaint as if more fully set forth herein.

21.   On or about September 16, 2016, D/C expressly or impliedly agreed that it would carefully and safely store the Graphium printing machine as a bailee of goods for hire in its exclusive care, custody, and control in its warehouse located at 1300 East Devon Avenue, Elk Grove Village, Illinois.

**Exhibit A**

22.   The Graphium printing machine was in good order and condition when first received by D/C.

23.   In breach of its duties and obligations as a bailee of the Graphium printing machine, D/C failed to ensure that the Graphium printing machine was not damaged as a result of exposure to freezing and otherwise inclement weather as a result of the unauthorized relocation of the machine outdoors of the warehouse, and was negligent in the storage and care of the Graphium printing machine in one or more of the following ways:

a.   Failing to keep the Graphium printing machine located in a temperature-controlled indoor storage facility, as it had agreed to do;

b.   Failing to obtain permission to relocate the Graphium printing machine from an indoor temperature-controlled storage warehouse to a shipping container located outdoors of the warehouse which had no temperature-controlled protection;

c.   Failing to determine if the Graphium printing machine could be stored outdoors in a nontemperature-controlled environment without sustaining damages as a result of the freezing and otherwise inclement outdoor weather conditions; and

d.   Was otherwise negligent while the Graphium printing machine was in its exclusive care, custody, and control.

24.   As a proximate result of D/C's breach of its duties as a bailee, FNAC has been damaged in excess of $1.65 million, exclusive of costs and prejudgment interest.

**Exhibit A**

WHEREFORE, FNAC respectfully requests that judgment be entered in its favor and against D/C in excess of $1.65 million, plus costs, prejudgment interest, and such other and further relief as this Court deems equitable and just.

## COUNT III – NEGLIGENCE

25.  FNAC hereby incorporates paragraphs 1-24 of this complaint as if more fully set forth herein.

26.  D/C owed a duty of care to FNAC with respect to the Graphium printing machine while the machine was in its exclusive care, custody, and control for hire.

27.  In breach of that duty of due care, D/C was negligent in one or more of the following ways:

a.   Failing to keep the Graphium printing machine located in a temperature-controlled indoor storage facility, as it had agreed to do;

b.   Failing to obtain permission to relocate the Graphium printing machine from an indoor temperature-controlled storage warehouse to a shipping container located outdoors of the warehouse which had no temperature-controlled protection;

c.   Failing to determine if the Graphium printing machine could be stored outdoors in a nontemperature-controlled environment without sustaining damages as a result of the freezing and otherwise inclement outdoor weather conditions; and

d.   Was otherwise negligent while the Graphium printing machine was in its exclusive care, custody, and control.

**Exhibit A**

28.  As a proximate result of D/C's breach of its duty of due care, FNAC has been damaged in an amount in excess of $1.65 million, exclusive of costs and prejudgment interest.

WHEREFORE, FNAC respectfully requests that judgment be entered in its favor and against D/C for an amount in excess of $1.65 million, plus costs, prejudgment interest, and such other and further relief as this Court deems equitable and just.

## COUNT IV – CONVERSION

29.  FNAC hereby incorporates paragraphs 1-28 of this complaint as if more fully set forth herein.

30.  FNAC was the owner of the Graphium printing machine and at all material times had an absolute and unconditional right to determine that the machine was to be stored indoors and was not to be relocated outdoors without permission.

31.  D/C assumed control and dominion of the Graphium printing machine in its care, custody, and control, and for its own purposes, wrongfully and without authorization relocated the machine from indoor warehouse storage to outdoor storage.

32.  As a result of the unauthorized actions by D/C, the Graphium printing machine was damaged, and FNAC suffered a total loss.

WHEREFORE, FNAC respectfully prays that judgment be entered in its favor and against D/C for an amount in excess of $1.65 million in compensatory damages, and equal or greater amount in punitive damages, plus interest, costs, attorneys' fees and expenses, and such other and further relief as this Court deems proper.

**Exhibit A**

## COUNT V – GROSS NEGLIGENCE

33.   FNAC hereby incorporates paragraphs 1-32 of this complaint as if more fully set forth herein.

34.   D/C had a duty to store and care for FNAC's Graphium printing machine in its care, custody, and control.

35.   D/C willfully, wantonly, and recklessly breached its duty by failing to properly store, care for, and protect the Graphium printing machine from damage by exhibiting either indifference to or conscious disregard for the welfare of the Graphium printing machine in D/C's care, custody, and control, and by relocating the machine outdoors, exposing the machine to freezing and inclement conditions, all to serve its own purposes and in total disregard for the interests of FNAC.

36.   As a direct and proximate cause of D/C's willful, wanton, and reckless conduct, the Graphium printing machine was damaged beyond repair and was therefore a total loss.

37.   By reason of D/C's willful, wanton, and reckless breach of its duty, FNAC has sustained damages, as nearly as can be estimated, in an amount in excess of $1.65 million, plus interest, costs, attorneys' fees, and expenses.

WHEREFORE, FNAC prays that judgment be entered in its favor and against D/C for an amount not less than $1.65 million in compensatory damages, an equal or greater amount in punitive damages, plus interest, costs, attorneys' fees and expenses, and such other and further relief as this Court deems proper.

## COUNT VI – ILLINOIS LIABILITY UNDER 810 ILCS 5/7-204(a)

38.   FNAC hereby incorporates paragraphs 1-37 of this complaint as if more fully set forth herein.

**Exhibit A**

39.   At all relevant times to the storage of the Graphium printing machine, there was in effect in Illinois 810 ILCS 5/7-204(a), which required D/C to exercise care with regard to the Graphium printing machine that a reasonably careful person would exercise under the circumstances.

40.   In breach of its statutory duties, D/C failed to exercise due care and caution as a reasonable warehouseman, as it had agreed to do, and in accordance with 810 ILCS 5/7-204(a), in that it:

    a.   Failed to keep the Graphium printing machine located in a temperature-controlled indoor storage facility;

    b.   Failed to obtain permission to relocate the Graphium printing machine from an indoor temperature-controlled storage warehouse to a shipping container located outdoors of the warehouse which had no temperature-controlled protection;

    c.   Failed to determine if the Graphium printing machine could be stored outdoors in a nontemperature-controlled environment without sustaining damages as a result of the freezing and otherwise inclement outdoor weather conditions; and

    d.   Was otherwise negligent while the Graphium printing machine was in its exclusive care, custody, and control.

41.   As a proximate result of D/C's breach of its statutory duties and obligations, the Graphium printing machine was damaged and a total loss in excess of $1.65 million, exclusive of interest and costs.

42.   D/C has paid no amount of loss to FNAC, although duly demanded.

**Exhibit A**

WHEREFORE, FNAC respectfully requests that judgment be entered in its favor and against D/C in an amount not less than $1.65 million, plus costs, prejudgment interest, and such other and further relief as this Court deems equitable and just.

Respectfully submitted,

FUJIFILM NORTH AMERICA CORPORATION

By: /s/Dennis Minichello
    Dennis Minichello, #3122059
    Matthew C. Koch, #6283277
    Marwedel, Minichello & Reeb, P.C.
    303 West Madison Street, Suite 1100
    Chicago, Illinois 60606
    (312) 902-1600
    dminichello@mmr-law.com
    mkoch@mmr-law.com

**Exhibit A**

| From: | Kimberly Padovano <kimberlyp@dcexport.com> |
|---|---|
| Sent: | Monday, September 19, 2016 1:18 PM |
| To: | Joy Askgaard |
| Cc: | Rick Drogosz; Almendra Lares; Christine Saito; Don Rasmussen; Robert Villarreal; Russell Rayos; Eugene Seike |
| Subject: | RE: Label Expo // PICK UP Sept 17, 2016 // Graphium printing machine |

Hello Joy,

Every effort will be made to ensure the safe storage and handling of the pieces received. The pictures are receiving pictures taken as the freight was brought into the warehouse. The freight will be placed in storage so as to avoid any issues.

Kind regards,

Kim Padovano
Customer Administrator
D/C Export & Domestic Packing
1300 E. Devon Ave.
Elk Grove Village, IL 60007
Phone:847-593-4200
Fax:847-593-4209

**Transportation & Warehousing  Industrial Packing & Crating  Packaging Solutions**

Atlanta ◊ Baltimore ◊ Charleston ◊ Chicago ◊ Greenville ◊ Houston ◊ Long Beach
New York/New Jersey ◊ Norfolk ◊ Miami ◊ Oakland/San Francisco ◊ Seattle



**From:** Joy Askgaard [mailto:jaskgaard@cargomaritime.com]
**Sent:** Monday, September 19, 2016 1:55 PM
**To:** Kimberly Padovano
**Cc:** Rick Drogosz; Almendra Lares; Christine Saito; Don Rasmussen; Robert Villarreal; Russell Rayos; Eugene Seike; Dominick Cocciemiglio Jr
**Subject:** RE: Label Expo // PICK UP Sept 17, 2016 // Graphium printing machine

Hello Kim,

As shared with you, Fuji requested we look for another warehouse because they were concerned that your warehouse was too small and hardly have any space.
At this time, we were able to convince them to keep it with you.

Looking at these photos you sent our colleague Eugene, I can see that indeed it is pretty tight at your facility.

1

EXHIBIT 1

**Exhibit A**

**Christine Saito**

| | |
|---|---|
| **From:** | Paul Michalak <PaulM@dcexport.com> |
| **Sent:** | Wednesday, January 11, 2017 11:24 AM |
| **To:** | Joy Askgaard; Dominick Cocciemiglio Jr |
| **Cc:** | Kimberly Padovano; Christine Saito; Eugene Seike; Don Rasmussen; Russell Rayos; Almendra Lares; Nicoletti, Christopher (Client Service, Chicago) (Christopher.Nicoletti@integrogroup.com); Martin Askgaard |
| **Subject:** | RE: Continental Data Label |
| **Attachments:** | IMG_0029.jpg |

Items are inside warehouse.

Paul Michalak
D/C Export / Transport
847-593-4200

"THE BITTERNESS OF POOR QUALITY REMAINS LONG
AFTER THE SWEETNESS OF LOW PRICE IS FORGOTTEN."
**Benjamin Franklin —**
www.dcexport.com



**Linked** in
Follow Us on LinkedIn

**From:** Joy Askgaard [mailto:jaskgaard@cargomaritime.com]
**Sent:** Wednesday, January 11, 2017 12:30 PM
**To:** Paul Michalak <PaulM@dcexport.com>; Dominick Cocciemiglio Jr <DomJr@dcexport.com>
**Cc:** Kimberly Padovano <kimberlyp@dcexport.com>; Christine Saito <christine@cargomaritime.com>; Eugene Seike <eugene@cargomaritime.com>; Don Rasmussen <don@cargomaritime.com>; Russell Rayos <russell@cargomaritime.com>; Almendra Lares <almendra@cargomaritime.com>; Nicoletti, Christopher (Client Service, Chicago) (Christopher.Nicoletti@integrogroup.com) <Christopher.Nicoletti@integrogroup.com>; Martin Askgaard <martin@cargomaritime.com>
**Subject:** RE: Continental Data Label

Under no circumstances these Fujifilm machines are to be placed outside regardless if short term – due to the nature of the commodity, that's a given.

We entrusted DC to keep these machine indoors, that is what we are paying for all these months.

Were you informed by your team that Fujifilm was going to do an ocular ? The timing was impeccable ( irony ) -- while the machine was outdoors...

*Kind regards,*

1

**Exhibit A**

*Joy ASKGAARD*

*Managing Director*

*Cargo Maritime, Inc.*

*Mobile: 310-628-1561*

*Office: 800-264-8880 * Fax: 800-508-4fax*

*email: jaskgaard@cargomaritime.com*

*www.cargomaritime.com*

  

Cargo Maritime, Inc. conducts all transactions and services subject to the National Customs Brokers and Forwarders Association of America, Inc.'s Terms and Conditions of Service, which are available online at www.cargomaritime.com. Use of our services constitutes acceptance of our Terms and Conditions and acknowledgement that in no instance while tendering any shipment to us for any and all services, storage, and transport, will our liability exceed the amount as per our Terms and Conditions.

CONFIDENTIALITY NOTICE: The information contained in this e- mail message and any attachment(s) is intended for the sole use of the individual and entity to who it was addressed. This information is privileged, confidential and protected from disclosure. If you are not the intended recipient, you are hereby notified that you have received this communication in error and any review, disclosure, dissemination, distribution or copying of it or its contents is strictly prohibited.

**From:** Paul Michalak [mailto:PaulM@dcexport.com]
**Sent:** Wednesday, January 11, 2017 9:52 AM
**To:** Joy Askgaard; Dominick Cocciemiglio Jr
**Cc:** Kimberly Padovano; Christine Saito; Eugene Seike; Don Rasmussen; Russell Rayos; Almendra Lares
**Subject:** RE: Continental Data Label

This was moved into van trailers for short time as I re-arrange some freight in warehouse. I will send pictures of the freight inside warehouse shortly.

Paul Michalak
D/C Export / Transport
847-593-4200

"THE BITTERNESS OF POOR QUALITY REMAINS LONG
AFTER THE SWEETNESS OF LOW PRICE IS FORGOTTEN."
**Benjamin Franklin —**
www.dcexport.com



**Exhibit A**

**From:** Joy Askgaard [mailto:jaskgaard@cargomaritime.com]
**Sent:** Wednesday, January 11, 2017 11:41 AM
**To:** Dominick Cocciemiglio Jr <DomJr@dcexport.com>
**Cc:** Kimberly Padovano <kimberlyp@dcexport.com>; Paul Michalak <PaulM@dcexport.com>; Christine Saito <christine@cargomaritime.com>; Eugene Seike <eugene@cargomaritime.com>; Don Rasmussen <don@cargomaritime.com>; Russell Rayos <russell@cargomaritime.com>; Almendra Lares <almendra@cargomaritime.com>
**Subject:** FW: Continental Data Label

Please review in detail what Fuji techs discovered during the ocular yesterday.
The Graphium on a trailer outside your building.
They have paid for indoor storage all this time.

Is the machine still outside at this point?

**From:** Bob Wokasch
**Sent:** Wednesday, January 11, 2017 7:50 AM
**To:** Joy Askgaard; Christine Saito
**Subject:** Fwd: Continental Data Label

Weren't we paying for inside storage?

---------- Forwarded message ----------
From: **Michael Barry**
Date: Tue, Jan 10, 2017 at 4:09 PM
Subject: Fwd: Continental Data Label
To: Bob Wokasch

FYI, when we saw the Graphium today it was in a trailer and very cold. It does not appear that it has been in inside storage for some time. I even say some ice on the base of one of the pallets. Can we confirm we were paying for internal storage???

---------- Forwarded message ----------
From: **David Morris**
Date: Tue, Jan 10, 2017 at 2:53 PM
Subject: Continental Data Label
To: Gary Burt

Gary,

Hello. Hopefully all is well. Unfortunately I have some potentially bad news. Mike Barry and Steve Havlik stopped by the off site storage facility for the Continental Data Label Graphium this afternoon and discovered that this facility was storing the Graphium in a trailer outside of their building. This is not what they were supposed to do. I know that the storage facility was given specific instructions to store the Graphium inside. As mentioned, this did not happen.

We have had very cold weather here recently. As low as 0 degrees Fahrenheit. Could you be available tomorrow morning to discuss what parts we may want to have on hand in case any freezing / expansion damage

3

**Exhibit A**

has occurred? Thank you for your assistance with this request. I will look forward to speaking to you in the morning or at your first availability.

Best regards,

David Morris
Support Manager - High Speed Inkjet
**FUJIFILM North America Corporation**
Graphic Systems Division

**Exhibit A**



**Exhibit A**

## Christine Saito

| | |
|---|---|
| **From:** | Paul Michalak <PaulM@dcexport.com> |
| **Sent:** | Tuesday, January 24, 2017 12:32 PM |
| **To:** | Christine Saito |
| **Cc:** | Kimberly Padovano; Joy Askgaard; Eugene Seike; Russell Rayos; Don Rasmussen; Almendra Lares; Dominick Cocciemiglio Jr; Christopher.Nicoletti@integrogroup.com |
| **Subject:** | RE: DC warehouse |

As I mentioned all freight is inside warehouse and is not being moved around. It was a one time situation. As far as future storage needs it will depend on space availability at the time requested.

Paul Michalak
D/C Export / Transport
847-593-4200

"THE BITTERNESS OF POOR QUALITY REMAINS LONG
AFTER THE SWEETNESS OF LOW PRICE IS FORGOTTEN."
**Benjamin Franklin —**
www.dcexport.com

Linked in
Follow Us on LinkedIn

SmartWay
Transport Partner
Getting There With Cleaner Air

**From:** Christine Saito [mailto:christine@cargomaritime.com]
**Sent:** Tuesday, January 24, 2017 2:23 PM
**To:** Paul Michalak <PaulM@dcexport.com>
**Cc:** Kimberly Padovano <kimberlyp@dcexport.com>; Joy Askgaard <jaskgaard@cargomaritime.com>; Eugene Seike <eugene@cargomaritime.com>; Russell Rayos <russell@cargomaritime.com>; Don Rasmussen <don@cargomaritime.com>; Almendra Lares <almendra@cargomaritime.com>; Dominick Cocciemiglio Jr <DomJr@dcexport.com>; Christopher.Nicoletti@integrogroup.com
**Subject:** RE: DC warehouse

Hi Paul,

As we have informed you since 2013 under our Due Diligence checklist -- if you are to re-handle and move around any of the machines, it is our right to know, and thus we are able to send one of our reps to witness the re-handling.

You have not answered our questions in its entirety :

i. Please confirm that you have not moved around or re-handled the crates listed machines/accessories below

ii. We also need to know if DC is no longer capable to receive more freight for storage due to space issues, because of what we witnessed 2 weeks ago where you moved 11 of our crates outdoors regardless if in an enclosed truck, this indicate you may not have enough space for our future cargo ?

**Exhibit A**

Kind regards,

Christine Saito
Cargo Maritime, Inc.
Tel: 800-264-8880
Fax: 800-508-4329
email: christine@cargomaritime.com
http://www.cargomaritime.com

Cargo Maritime, Inc. conducts all transactions and services subject to the National Customs Brokers and Forwarders Association of America, Inc.'s Terms and Conditions of Service, which are available online at www.cargomaritime.com. Use of our services constitutes acceptance of our Terms and Conditions and acknowledgement that in no instance while tendering any shipment to us for any and all services, storage, and transport, will our liability exceed the amount as per our Terms and Conditions.

CONFIDENTIALITY NOTICE: The information contained in this e- mail message and any attachment(s) is intended for the sole use of the individual and entity to who it was addressed. This information is privileged, confidential and protected from disclosure. If you are not the intended recipient, you are hereby notified that you have received this communication in error and any review, disclosure, dissemination, distribution or copying of it or its contents is strictly prohibited.

**From:** Paul Michalak [mailto:PaulM@dcexport.com]
**Sent:** Tuesday, January 24, 2017 11:30 AM
**To:** Christine Saito; Joy Askgaard; Eugene Seike; Russell Rayos; Don Rasmussen; Almendra Lares
**Cc:** Kimberly Padovano
**Subject:** FW: DC warehouse

All items are here inside warehouse. We have 6 pieces stored.

Paul Michalak
D/C Export / Transport
847-593-4200

"THE BITTERNESS OF POOR QUALITY REMAINS LONG
AFTER THE SWEETNESS OF LOW PRICE IS FORGOTTEN."
**Benjamin Franklin –**
www.dcexport.com



**From:** Christine Saito [mailto:christine@cargomaritime.com]
**Sent:** Monday, January 23, 2017 3:29 PM
**To:** Kimberly Padovano; Dominick Cocciemiglio Jr
**Cc:** Joy Askgaard; Eugene Seike; Robert Villarreal; Russell Rayos; Don Rasmussen; Almendra Lares
**Subject:** DC warehouse

Dear Kim/Dom;

**Exhibit A**

We have been paying DC Warehouse for indoor storage for several years, and this recent situation where we found your warehouse moving an entire lot of the Graphium Printer and accessories outdoors was a complete disappointment to us.

Please confirm that you have not moved around or re-handled the following machines/accessories:

**DC EXPORT, ELK GROVE VILLAGE**

09971 – NOVUS / UVISTAR HYBRID (S/N 1016) – uncrated (1 pc)
PARTS, L129" x W50" x 12",
In storage since : January 26, 2016

09798 – AUTOLOADER (99004) (1 pc)
ACCESSORIES, L166" x W97" x 84", 3,439 lbs
In storage since : November 6, 2015

09132 – LEA/OFFLOAD (89005) – 1 pc OPENED NEW FILE 10413-81607-T
MV Oberon v.CF428-OBE – ETA Baltimore: 08/17/2014
Offloader: 146" x 96" x 95" / 3,527 lbs
In storage since : May 6, 2016

10216 (Previous CMI File: 09847) - M/V ENDURANCE voyage CF405 (2 pcs)
- Recessed Automation S/N 88107
- Standard Automation S/N 88107
In storage since : May 27, 2016

-If you are to re-handle and move around any of the machines, it is our right to know, and thus we are able to send one of our reps to witness the re-handling.
-We also need to know if DC is no longer capable to receive more freight for storage due to space issues

Kind regards,

Christine Saito
Cargo Maritime, Inc.
Tel: 800-264-8880
Fax: 800-508-4329
email: christine@cargomaritime.com
http://www.cargomaritime.com

Cargo Maritime, Inc. conducts all transactions and services subject to the National Customs Brokers and Forwarders Association of America, Inc.'s Terms and Conditions of Service, which are available online at www.cargomaritime.com. Use of our services constitutes acceptance of our Terms and Conditions and acknowledgement that in no instance while tendering any shipment to us for any and all services, storage, and transport, will our liability exceed the amount as per our Terms and Conditions.

CONFIDENTIALITY NOTICE: The information contained in this e- mail message and any attachment(s) is intended for the sole use of the individual and entity to who it was addressed. This information is privileged, confidential and protected from disclosure. If you are not the intended recipient, you are hereby notified that you have received this communication in error and any review, disclosure, dissemination, distribution or copying of it or its contents is strictly prohibited.

**Exhibit A**

# EXHIBIT 2

Exhibit A



It is a strict requirement and policy of Cargo Maritime, Inc. for warehouse companies when handling our cargo, to adhere to the Cargo Maritime Warehouse Due Diligence checklist.

1. Safety Comes first to Cargo Maritime***Please have your personnel HANDLE CARGO WITH GREAT CARE***

2. Keep our cargo away from traffic and hazardous cargo.

3. At all times cargo must be kept inside a covered facility

4. Cargo can not be re-handled or moved around inside covered facility, unless Cargo Maritime Inc. is notified beforehand and a cargo surveyor is in attendance when doing so.

5. If any forecast of extreme environmental conditions that may potentially cause harm to our cargo; Cargo Maritime, Inc needs to be forewarned so we can take precautionary measures.

6. Under no circumstances drivers are to take cargo home or take to residential area to park while cargo is in their custody.

Cargo Maritime, Inc. conducts all transactions and services subject to the National Customs Brokers and Forwarders Association of America, Inc.'s Terms and Conditions of Service, which are available online at www.cargomaritime.com. Use of our services constitutes acceptance of our Terms and Conditions and acknowledgement that in no instance while tendering any shipment to us for any and all services, storage, and transport, will our liability exceed the amount as per our Terms and Conditions.

EXHIBIT 2

**Exhibit A**

# EXHIBIT 3



**CARGO MARITIME, INC.**

5777 WEST CENTURY BLVD., SUITE 1755, LOS ANGELES, CA 90045 U.S.A.

TEL: (310) 670-5000   FAX: (310) 670-5115

FMC NO. 16581NF   FAA NO. WP-00-06-008   IATA NO. 0118569/0015

email: info@cargomaritime.com

PRE-LIMINARY NOTICE OF CLAIM

DATE: JANUARY 11, 2017

TO: DC EXPORT & DOMESTIC PACKING INC.

Re:   GRAPHIUM LABEL PRINTER (S/N: 165917)
      11 CRATES
      MOVED TO DC EXPORT WAREHOUSE ON SEPTEMBER 17, 2016

Gentlemen:

Reference is made to the shipment described above. We hereby notify you that we reserve the right to file claim against you for negligence.

We therefore request that you consider this as a preliminary notice of claim. A **formal claim** to be filed at a later date when the actual loss has been ascertained. Although the extent of loss has not been determined, we are holding you responsible for the loss sustained by this consignment as the goods were in your care, custody or control as per the attached back-up document.

Our failure to deal with this claim in detail at this stage is not to be construed as a waiver of our rights.

Please be advised that this notice of claim may be amended at any time. We respectfully request that you acknowledge receipt of this claim notification.

Very truly yours,

*Christine Saito*

Christine Saito
CARGO MARITIME, INC.

Cargo Maritime, Inc. conducts all transactions and services subject to the National Customs Brokers and Forwarders Association of America, Inc.'s Terms and Conditions of Service, which are available online at www.cargomaritime.com. Use of our services constitutes acceptance of our Terms and Conditions and acknowledgment that in no instance while tendering any shipment to us for any and all services, storage, and transport, will our liability exceed the amount as per our Terms and Conditions.

EXHIBIT 3

**Exhibit A**

## U.S. District Court for the Northern District Of Illinois
## Attorney Appearance Form

Case Title:  FUJIFILM North America         Case Number:  17-cv-6680
Corporation v. D/C Export & Domestic
Packing, Inc.

An appearance is hereby filed by the undersigned as attorney for:
FUJIFILM North America Corporation, Plaintiff

Attorney name (type or print):  Dennis Minichello

Firm:    Marwedel, Minichello & Reeb, P.C.

Street address:    303 West Madison Street, Suite 1100

City/State/Zip:   Chicago, IL  60606

Bar ID Number: 3122059                  Telephone Number:   (312) 902-1600
(See item 3  in instructions)

Email Address:  dminichello@mmr-law.com

Are you acting as lead counsel in this case?          ☒ Yes     ☐ No

Are you acting as local counsel in this case?         ☐ Yes     ☒ No

Are you a member of the court's trial bar?            ☒ Yes     ☐ No

If this case reaches trial, will you act as the trial attorney?   ☒ Yes     ☐ No

If this is a criminal case, check your status.    ☐    Retained Counsel

                                                 ☐    Appointed Counsel
                                                      If appointed counsel, are you a

                                                      ☐ Federal Defender
                                                      ☐ CJA Panel Attorney

In order to appear before this Court an attorney must either be a member in good standing of this Court's
general bar or be granted leave to appear *pro hac vice* as provided for by local rules 83.12 through 83.14.
I declare under penalty of perjury that the foregoing is true and correct. Under 28 U.S.C.§1746, this
statement under perjury has the same force and effect as a sworn statement made under oath.

Executed on September 14, 2017

Attorney signature:   S/ Dennis Minichello

                      (Use electronic signature if the appearance form is filed electronically.)

Revised  8/1/2015

**Exhibit A**

## U.S. District Court for the Northern District Of Illinois
## Attorney Appearance Form

Case Title: FUJIFILM North America Corporation v. D/C Export & Domestic Packing, Inc.

Case Number: 17-cv-6680

An appearance is hereby filed by the undersigned as attorney for:
FUJIFILM North America Corporation, Plaintiff

Attorney name (type or print): Matthew C. Koch

Firm: Marwedel, Minichello & Reeb, P.C.

Street address: 303 West Madison Street, Suite 1100

City/State/Zip: Chicago, IL 60606

Bar ID Number: 6283277
(See item 3 in instructions)

Telephone Number: (312) 902-1600

Email Address: mkoch@mmr-law.com

Are you acting as lead counsel in this case? ☐ Yes ☒ No

Are you acting as local counsel in this case? ☐ Yes ☒ No

Are you a member of the court's trial bar? ☒ Yes ☐ No

If this case reaches trial, will you act as the trial attorney? ☐ Yes ☒ No

If this is a criminal case, check your status. ☐ Retained Counsel
☐ Appointed Counsel
If appointed counsel, are you a
☐ Federal Defender
☐ CJA Panel Attorney

In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by local rules 83.12 through 83.14. I declare under penalty of perjury that the foregoing is true and correct. Under 28 U.S.C.§1746, this statement under penalty of perjury has the same force and effect as a sworn statement made under oath.

Executed on September 14, 2017

Attorney signature: S/ Matthew C. Koch
(Use electronic signature if the appearance form is filed electronically.)

Revised 8/1/2015

**Exhibit A**